IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AMY LEE SULLIVAN,

                        Plaintiff,                         OPINION AND ORDER

        v.
                                                          15-cv-298-wmc
FLORA, INC.,

                        Defendant.

This case is set for a jury trial on plaintiff Amy Sullivan's copyright infringement claims, commencing April 17, 2017. In advance of this afternoon's final pretrial conference, the court issues the following opinion and order on the parties' respective motions *in limine*, as well as their joint motion concerning the use of computers by witnesses. In addition, the court will address plaintiff's motion for attorney's fees and costs based on discovery abuses.

## OPINION

### I. Joint Motion to Allow Witness Use of Computer

The parties filed a joint motion to permit witnesses to use a computer during testimony (dkt. #128), explaining that material, digital files most meaningfully display graphics in real time by use of various programs, such as Adobe After Effects, Adobe Photoshop, Bridge and Adobe Illustrator. As with any trial aid that will assist in the jury's understanding of the relevant facts, the court is more than open to the use of computers during testimony, but would like a demonstration during the final pretrial conference to better understand: (1) how computer graphics will be used by witnesses under traditional

questioning; (2) if we are simply talking about use of graphics as a demonstrative aid or as trial exhibits; and (3) if the latter, how those exhibits will be preserved.  Accordingly, the court will RESERVE on this motion.

## II.  Plaintiff's Motions in *Limine* (dkt. #153)

### A.  MIL No. 1:  permit expert Danny Mager to testify during liability phase

Plaintiff seeks an order permitting her to present testimony from a previously-disclosed damages expert, Danny Mager, during the liability phase of trial.  Specifically, plaintiff seeks to present Mager's testimony about his "knowledge of customs and practice in the graphic arts industry related to art direction and the practice of supplying preliminary sketches to illustrators and graphic artists as part of standard art direction." (Pl.'s Mot. (dkt. #153) 2.)  Plaintiff contends that this evidence is relevant to the jury's determination of whether the copyrighted work constitutes a "joint work."  Moreover, plaintiff represents that the substance of this testimony was disclosed in Sullivan's supplemental Rule 26(a)(1)(A)(iii) disclosures, and Flora did not object.

In her motion, plaintiff acknowledges that she did not disclose a liability expert on this issue previously, but explains that she saw no need, since Flora did not allege any joint work defense as part of its answer; rather, Flora asserted that only Designomotion and Flora had ownership interests.  (Pl.'s Mot. (dkt. #153) 3.)  Plaintiff further acknowledges in a footnote that Flora's motion for summary judgment did raise a joint authorship challenge, but that motion was filed after the liability expert disclosure deadlines.  Finally, plaintiff acknowledges that she could have sought leave months sooner to supplement

liability expert testimony, but points out that Flora still has not plead a defense of joint authorship. (*Id.* at 4.)

The court is most perplexed by this last retort. As an initial matter, it is not obvious that a formal amendment was required, since "joint authorship" is not a classic affirmative defense that a party must plead or waive. On the contrary, it is simply evidence that supports Flora's denial in its answer to plaintiff's claim of controlling ownership. Moreover, plaintiff was placed on actual notice of the defense at least by the June 2016 summary judgment filing, and practically much earlier given defendant's opposition to plaintiff's motion to amend her complaint in October 2015. (*See* Def.'s Opp'n (dkt. #174) 2.) On this record, therefore, the court finds that plaintiff unduly delayed naming Mager as a liability expert.

The only remaining question is what prejudice, if any, is done Flora by allowing this untimely supplement. Given that it is too late for Flora to find a rebuttal expert, and the obvious risk that Mager's proposed opinion testimony is likely to run afoul of, or at least confuse the jury as to, the court's legal instructions, the court agrees that plaintiff's motion *in limine* is DENIED.

### B. MIL No. 2: exclude any evidence and argument regarding defenses for which discovery was not produced

In this motion, plaintiff seeks an order excluding a number of other, so-called affirmative defenses plead in Flora's answer for which it failed to produce any supporting evidence. Specifically, Sullivan seeks to exclude any evidence or argument on the following defenses: (1) failure to state a claim / Rule 12(b)(6); (2) equitable estoppel, laches, waiver,

unclean hands and other equitable defenses; and (3) barring claims based on plaintiff's license agreement with Designomotion; (4) also barring claims because any contributions of plaintiff were licensed on a world-wide basis, in perpetuity, to Designomotion for Flora's benefit"; (5) Sullivan lacks any right, title or interest in the works at issue and has authorized or license Flora to use the works; (6) damages being caused by the acts of others; (7) damages caused by her own actions or inactions; (8) failure to mitigate her damages; and (9) claims and damages barred based on plaintiff's own copyright misuse. (Pl.'s Mot. (dkt. #153) 4-11.)

As an initial observation, some of these defenses -- specifically, the ones concerning Designomotion and Sullivan's agreement with Designomotion -- belies plaintiff's argument that defendant failed to plead a joint authorship defense. While defendant argues generally that a motion in *limine* is not a proper mechanism to "choke off" defenses, it goes on to disavow any intent to assert defenses based on categories 1, 2, 6, 7, 8 or 9.

As for the other three asserted defenses, defenses 3 and 4 both concern plaintiff's license agreement with Designomotion and whether that bars plaintiff's claims both with respect to liability and damages. Defendant plead this defense and it has been a focus of discovery, as defendant detailed in its brief in opposition. (Def.'s Opp'n (dkt. #174) 6-7.) Plaintiff presented no basis -- and the court finds none -- to preclude defendant from presenting evidence and argument in support of this defense. As for defense 5 -- that plaintiff's claims are barred because she lacks any right, title or interest in the works at issue -- this issue has also been front and center in this case from the beginning. Regardless, the court also finds no basis to bar this so-called defense. As such, plaintiff's motion is

GRANTED IN PART AS UNOPPOSED as to defenses 1, 2, 6, 7, 8 and 9, and DENIED IN PART as to defenses 3, 4 and 5.

### C. MIL No. 3:  exclude Flora's evidence and argument concerning the invalidity of Sullivan's copyright registrations due to alleged omissions

Next, plaintiff seek as order excluding any evidence or argument that Sullivan's claims are barred because her copyright registrations are invalid due to improper omissions. At summary judgment, the court rejected this defense due to defendant's failure to follow the appropriate procedure for invalidating copyright registrations under 17 U.S.C. § 411(b).  (10/7/16 Op. & Order (dkt. #101) 36.)  In its response to the motion in *limine*, defendant argues that the court makes the request to the Copyright Register, and the request can happen at any time.  (Def.'s Opp'n (dkt. #174) 10-11.)  The onus, however, would still be on *Flora* to seek that equitable action, which it has failed to do.  Without legal support, Flora also argues that it should be able to present evidence and argue that the registrations knowingly included inaccurate information, proposing instructions and a verdict on this issue.  Regardless of whether the *court* would and still could seek review by the Copyright Register, this is *not* an issue for the jury.  Accordingly, plaintiff's motion number 3 is GRANTED, and the court will hear any evidence that bears exclusively on making such a request while the jury is deliberating as to liability.

### D. MIL No. 4:  exclude any evidence from Flora representative or employees regarding joint authorship intent as between Joseph Silver and Sullivan

The next motion seeks an order excluding any evidence from Flora representatives or employees about joint authorship.  Plaintiff contends that Flora had admitted that it

had no interaction with Sullivan until long after both the illustration and videos were created, and, as such "no Flora employee has direct knowledge of Sullivan's intent or contributions to the illustrations at issue in this case."  (Pl.'s Mot. (dkt. #153) 13.)  Moreover, plaintiff argues that any testimony about Silver or Designomotion's intent would be based on inadmissible hearsay, and therefore should also be excluded on that basis.

In its response, defendant states that it has no intention of offering such testimony.  Accordingly, this motion is GRANTED AS UNOPPOSED.

### E.  MIL No. 5:  permit Sullivan to present written communications during the liability phase of the trial that include references to money

Finally, plaintiff seeks an order permitting Sullivan to present written communications between Sullivan and Silver, Sullivan and Flora, and Silver and Flora during the liability phase, even though some of these communications include references to money, invoices, estimates and licensing fees.  Plaintiff contends that these documents are relevant to liability determinations because they go to "what the parties agreed to, who would be creating the illustrations at issue, what rights were conveyed, a timeline of events, and Flora's knowledge of and willingness regarding its infringement."  (Pl.'s Mot. (dkt. #153) 13.)  Here, too, defendant does not object, and this motion is also GRANTED AS UNOPPOSED.

## III. Defendant's Motions in *Limine*

### A. MIL No. 1: exclude testimony of Dennis A. Kleinheinz (dkt. #135)

Flora's first three motions seek to exclude expert testimony. The admissibility of expert testimony in federal courts is governed principally by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

A district court functions as a "gatekeeper" regarding expert testimony. The court must determine whether a party's proffered expert testimony is relevant and reliable. *Daubert*, 509 U.S. at 589; *see also United States v. Johnsted*, 30 F. Supp. 3d 814, 816 (W.D. Wis. 2013) (expert testimony must be "not only relevant, but reliable"). Although expert testimony is "liberally admissible under the Federal Rules of Evidence," *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 723 (E.D. Wis. 2008), it must satisfy the following three-part test:

> (1) the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702;

(2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert*, 509 U.S. at 592-93; and

(3) the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702.

*Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Still, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

In this motion, defendant seeks to exclude plaintiff's damages expert Dennis A. Kleinheinz from testifying on the basis that his testimony is not relevant to the jury in resolving any factual disputes. Defendant contends that Kleinheinz did not conduct valuations or calculations of lost profits, but instead simply testified as to Flora's net profits, a fact which defendant contends is undisputed -- indeed, defendant states that it would stipulate that the figures are correct -- and does not fall within the realm of proper expert testimony.

In its response, plaintiff indicates that if "permitted to present this reliable and accurate information to the jury, [she] is willing to agree that it will not call Mr. Kleinheinz as a witness to relay that information." (Pl.'s Opp'n (dkt. #191) 1.) Accordingly, this motion is GRANTED, on the condition that the parties can reach a stipulation as to the amount of net profits for Flora, Inc. and Flora Manufacturing & Distributing Ltd.[1]

---

[1] Plaintiff spends the bulk of her response arguing that such information should be presented to the jury since it is required prove damages under 17 U.S.C. § 504. The court takes up that argument below in its decision on defendant's motions in *limine* nos. 5 and 6.

## B. MIL No. 2: exclude proposed damages testimony of Danny Mager (dkt. #136)

Having denied plaintiff's motion to allow Mager to testify as a liability expert, defendant hopes to go a step further and exclude the testimony of Danny Mager as a damages expert as well, for which Mager *was* timely disclosed. Defendant offers several bases for excluding Mager: (1) he is unqualified to offer any opinions concerning damages; (2) his proposed testimony is unreliable, and lacks analysis or any appreciation of relevant data; and (3) he contradicted his own opinion about a 3-15% royalty payment during his deposition. The court will address each in turn.

*First*, as for Mager's qualifications, defendant argues that his lack of applicable formal education or training in, for example, accounting or economics, renders him unqualified to offer expert opinions as to damages. While Mager represents that he is qualified to offer opinions about accounting and economics "in the advertising industry," defendant contends that his report and deposition testimony contradicts that statement. Plaintiff points to Mager's experience of over 25 years negotiating fees and terms with freelancers. Relying on this court's decision in *Waukesha Cty., Wis. v. Nationwide Life Ins. Co.*, No. 06-CV-656-BBC, 2008 WL 4699500, at *2 (W.D. Wis. Feb. 20, 2008), defendant counters that Mager's personal experience does not mean that he has a sufficient understanding generally about the market, especially given that his experience is localized and in state government, rather than specific to health product sales. Defendant also points to aspects of Mager's testimony -- specifically, his failure to recognize and account for the use of Flora's trademarks in some of the illustrations -- as further evidence of his

lack of qualifications. Based on this, defendant specifically challenges Mager's qualifications to opine as to a typical royalty basis of 3% to 15% of net profit.

In response, plaintiff contends that Mager need not be an accountant or economist to offer an opinion on valuing artwork for purposes of advertising. Mager has some 30 years of creative, marketing and advertising industry experience, including working with freelance artists covering a wide variety of art forms, such as illustration, graphic design, video production, photography and copyrighting. While defendant challenges Mager's qualification based on the fact that he is neither an accountant nor economist, defendant falls shorts of explaining why either qualification is *required* in light of Mager's planned testimony. He did not hold himself out as an expert in either economics or accounting; instead, Mager testified, inartfully perhaps, that he believed his experience owning an advertising company rendered him qualified to offer opinions regarding the "economics of the advertising industry," and "accounting as it pertains to the advertising industry." While the court agrees that Mager should not testify to experience in "economics" or "accounting," even if limited to the advertising industry, but sees no basis to strike his testimony based on a lack of qualifications in the advertising industry more broadly. Defendant, of course, is free to explore Mager's qualifications and limit his testimony to the scope of his understanding of the value of artwork for purposes of advertising.

*Second*, defendant challenges the reliability of Mager's testimony, arguing that it is not based on analysis, but instead "seemingly pulled from his imagination or general feelings." (Def.'s Mot. (dkt. #136) 5.) Among other pieces of data, defendant particularly criticizes Mager for failing to consider: (1) the scope of Sullivan's contribution in

comparison to Siliver/Designomotion's contribution, (2) the scope of Sullivan's contribution to the final videos, or (3) the amount plaintiff was paid by Designomotion. Defendant also argues that Mager's testimony about "items relieved upon" in his report demonstrates his failure to actually analyze those items. For example, defendant points to Mager's lack of knowledge of the terms of the agreement between Sullivan and Designomotion, and his failure to account for those terms in coming up with his proposed "re-use" fee of $3000 to $6000 per use.

These are all excellent areas for defendant to explore in cross-examination, but here, the court again finds no basis for striking Mager's testimony as unreliable. As plaintiff details in her opposition brief, Mager draws upon his extensive experience in advertising and also referenced and used industry resources, such as the Graphic Artists Handbook: Pricing & Ethical Guidelines and the American Institute of Graphich Arts guidelines, in forming his opinion. That is enough to establish that Mager's expertise may assist the jury in understanding the "worth" or "value" of her claimed contribution.

*Third*, in another challenge to the reliability of Mager's testimony, defendant points to Mager's apparent repudiation of his original 3% to 15% royalty rate opinion in the following excerpt from his deposition testimony:

> Q. How would you define net profit in that context?
>
> A. Net profit for me would be the amount I was paid by the client minus the expense of the subcontractor, would be my net profit.
>
> Q. And so how would you apply this example of 3 to 15 percent in that case?
>
> A. It's not relevant for that case.

11

> Q.  Why isn't it relevant?

> A.  Because I wasn't licensing the subcontractor.

(Depo. of Daniel Mager (dkt. #131) 16-17.)

From this brief exchange, defendant argues that Mager's royalty opinion is, therefore, inadmissible because in this case, an advertising agency, Designomotion, hired a subcontractor, Sullivan.  Defendant also points to Mager's testimony that a contractor would never pay a subcontractor more than what he or she is paid, but then failed to consider whether his 3% to 15% of net profit royalty payment opinion would create such a scenario here.

With respect to the specific challenge, plaintiff further directs the court to the American Institute of Graphic Arts guidelines, describing standard royalty rates as ranging from 3% to 15%.  (Pl.'s Opp'n (dkt. #192) 10.)  This provides an adequate basis to ground Mager's testimony.  Of course, defendant is also free to challenge that range as it applies to the specific facts at issue in this case.

As for defendant's challenge that Mager himself testified that the range is not applicable to the subcontractor arrangement in issue here, this argument is based on a theory that the jury must craft a damages award based on the prior payment to Sullivan by Designomotion.  In light of plaintiff's theory that Flora used her copyrighted illustration collections without authorization beyond the scope of the project with Designomotion, the jury need not rely or even consider that initial payment in determining a damages award. This ground for striking Mager's testimony is based on a false construct.  Regardless, it, too, is the proper subject of cross-examination, not exclusion of opinion testimony.

Finding Mager sufficiently qualified and his testimony sufficiently reliable to go before the jury, this motion is DENIED.

## C.  MIL No. 3:  exclude liability expert testimony (dkt. #137)

In addition to seeking to exclude Mager's damages testimony, defendant also filed a motion to exclude his testimony from the liability phase of trial -- the flip-side of plaintiff's motion in limine no. 1.  In addition to arguing that the opinions are untimely, defendant also contends that Mager is not qualified to offer testimony about authorship, copyrightable subject matter or any other legal conclusion, and that even if qualified, his testimony about what is copyrightable in unreliable and contradicts the law.  While the court generally agrees that this subject matter is best handled by a straightforward jury instruction, this motion is MOOTED by virtue of the court's ruling on plaintiff's motion in *limine* no. 1.

## D. MIL No. 4:  exclude mention of digital files (dkt. #138)

Defendant seeks an order excluding "hundreds of digital files that are 'source art'" to be "analyzed" by Amy Sullivan during trial.  (Def.'s Mot. (dkt. #128) 1.)  Defendant contends that such an analysis is not relevant to the claims at issue here, involving two copyright registrations of two-dimensional artwork.  From this, defendant reasons that the copyright registrations "do not cover the process by which the images were created, i.e., the multi-layers, graphic digital files." (*Id.* at 2-3.)  Moreover, defendant contends that the introduction of this testimony is more prejudicial than probative, especially in light of Flora's concession that plaintiff delivered her original, multi-layered source art for both

projects. Also, defendant argues that the introduction of this evidence would confuse the jury since the law requires the jury to compare Flora's alleged infringing work with the two-dimensional copyrighted illustrations, not these digital files.

In response, however, plaintiff offers two seemingly valid explanations as to the relevance of this evidence, both of which support of a finding that the digital files are more probative than prejudicial. First, the files and plaintiff's testimony describing the digital files are relevant to the issue of authorship and her contribution to the copyrighted illustrations. Second, and perhaps more critically, given that it undisputed plaintiff provided the digital files to defendant, this evidence is also relevant to the issue of copying. In particular, plaintiff's testimony about the multi-layered digital files appears directly relevant to the jury's determination of whether those images were used in other Flora advertising. Of course, defendant is free to stress in argument that the copyrights are for two-dimensional, and the court would consider providing a curative instruction if necessary. Even so, the court will RESERVE its final ruling as to this motion in *limine* pending a proffer at the final pretrial conference this afternoon.

### E. MIL No. 5: exclude mention of Flora, Inc.'s sales or profits (dkt. #139)

In this motion, Flora seeks to exclude evidence of its sales or profits on the basis that plaintiff failed to develop any credible, non-speculative correlation between the alleged infringement and Flora's sales. *See Mackie v. Rieser*, 298 F.3d 909, 915 (9th Cir. 2002) ("[T]here must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment."); *O'Connor v. Cindy Gerke & Assocs.*,

300 F. Supp. 2d 759, 771 (W.D. Wis. 2002) (plaintiff failed to meet its burden to show a nexus between the infringement and gross profits).

As described above, plaintiff named two damages experts -- Kleinheinz and Mager. As for Kleinheinz, also as described above, his opinions were limited to the amount of sales and net profits earned by Flora on its 7-Sources product line, stopping short of offering any opinion "of how or if any of the profits or sales are relevant to Plaintiff's alleged damages." (Def.'s Mot. (dkt. #139) 2 (citing Kleinheinz Depo. (dkt. #130) 7-8 (denying that he was asked to give an opinion about the *correlation* between infringement and sales)).) Similarly, defendant contends that Mager offered no opinion that could support a finding of a correlation between infringement and sales or profits; indeed, Mager's report makes no mention or citation to Flora's sales or profits whatsoever.

In her response, plaintiff points out the obvious flaw in defendant's motion: its implicit assumption, for which defendant provides *no* support, that *expert* testimony is required to prove the nexus between infringement and profits.[2] As an initial matter, Flora's net profits will be ushered in by stipulation of the parties -- as described above in granting defendant's unopposed first motion in *limine* -- and the court sees no reason why a jury would not be in a position to draw the link between infringement and profits given anticipated evidence about the role and value of advertising from the alleged infringer's perspective.

---

[2] Plaintiff's motion to seal her response to this motion in *limine* on the basis that it contains information that has been designated as Highly Confidential -- Trial Counsels' Eyes Only pursuant to the protective order entered by this court (dkt. #196) will be granted.

In her response, plaintiff also goes into an elaborate syllogism to establish the correlation between Flora's infringement and profit that depends on the jury adopting the following series of inferences: (1) defendant produced and used 17 unauthorized, infringing videos and four other categories of unauthorized uses for a total of 21 unauthorized uses; (2) Flora would have been willing to spend $420,000 on those unauthorized uses (based on the fact that they spent $20,000 each on the two authorized videos); (3) most of the uses were in 2013 and 2014, during which time Flora spent over $20 million on consumer advertising; (4) as such, the amount Flora would have spent on the unauthorized uses would represent approximately 20.5% of its 2013-2014 advertising budget; and (5) therefore, that same percentage of net profits can be attributable to the alleged infringing uses. Finally, plaintiff then contends that the same 20.5% figure should apply to net profits from 2015 and 2016, since Flora continued to use the unauthorized videos and other media during that time.

While this theory may not need expert testimony, the court still has an obligation to ensure that the jury has a sufficient factual basis to award a nonspeculative damages award based on lost profits. In particular, plaintiff's jump from a calculated portion of the advertising budget Flora would have spent on the alleged infringing use to an assumption that its advertising expense is directly proportional to net profits strikes the court as too speculative. As such, while defendant's motion in *limine* to exclude Flora, Inc.'s sales or profits is DENIED, the court will reserve on a more general challenge to plaintiff's lost profits damages theory pending additional argument at the final pretrial conference, as well as a possible evidentiary proffer while the jury deliberates as to liability.

### F. MIL No. 6: exclude mention of Flora Manufacturing & Distributing Ltd.'s sales or profits (dkt. #140)

Defendant also seeks to exclude evidence of the sales or profits of Flora Manufacturing & Distributing Ltd. In addition to the arguments presented above with respect to defendant Flora, Inc.'s motion to exclude evidence of its own sales or profits, defendant contends that the financial information of a separate company is not relevant without expert testimony to support a "piercing of the veil" theory. Defendant points to Kleinheinz's deposition testimony in particular, in which he admitted that he had not conducted the analysis required to support the piercing of the corporate veil between these companies. (Def.'s Mot. (dkt. #140) 2 (citing Kleinheinz Depo. (dkt. #130) 10)).)

In her response, plaintiff contends that the court should consider defendant's refusal to produce discovery that would have revealed what profits or other benefits Flora received from allowing other Flora entities, presumably including Flora Manufacturing & Distributing Ltd., to benefit from its infringement.[3] In particular, plaintiff represents that defendant refused to produce distribution agreements or provide a 30(b)(6) witness to testify about this arrangement. Plaintiff also points generally to deposition testimony in which Flora employees testified that "money and goods flow freely between Flora, Ltd. and Flora, Inc."

Frankly, given that the parties are on the eve of trial, the court is inclined to view as "too little, too late" any attempt to include a separate legal entities' profits, without naming that entity as a defendant, much less moving to compel discovery. Nevertheless,

---

[3] Although it is not entirely clear from plaintiff's response, this would appear to include the other entities' use the videos in foreign markets.

in light of certain discovery issues surrounding damages, the court will RESERVE on this motion pending further argument at the final pretrial conference. Plaintiff should also be prepared to detail the evidence it *has* obtained to support a finding that the two companies do not operate as separate legal entities.

### G. MIL No. 7: exclude evidence of foreign usages and activities (dkt. #141)

Next, defendant seeks to exclude evidence of alleged infringing foreign publications and uses. In support, defendant cites a case, *Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*, 24 F.3d 1088 (9th Cir. 1994), in which the Ninth Circuit held that a "copyright holder may recover damages that stem from a direct infringement of its exclusive rights that occurs within the United States," but that mere authorization of foreign activity is not sufficient to support a damages award in an American court. *Id.* at 1094. This approach appears to have been adopted by the majority of other courts who considered the issue, including this court in *Datacarrier S.A. v. WOCCU Servs. Grp.*, No. 16-cv-122-jdp, 2016 WL 6900716 (W.D. Wis. Nov. 22, 2016). *Id.* at *3-4 (discussing *Subafilms* and another opinion adopting the minority view that bases damages on authorization, and ultimately opting to follow *Subafilms*).

In response, plaintiff does *not* seek a more expansive reading of copyright damages, seemingly agreeing that the court should follow the holding of *Subafilms* and require direct infringement in the United States for an award of damages. Still, plaintiff contends that she has such proof here, namely in the form of current and former Flora employees' testimony that they produced the alleged infringing videos in the United States, which were then published in foreign countries or posted on YouTube. Plaintiff argues that the

activity of creating the alleged infringing publications constitutes direct infringement, and, therefore, provides an adequate basis for seeking damages based on those foreign films. In particular, plaintiff relies on the testimony of Amber Trant, a former graphic design employees of Flora, in describing her process for creating the Flor-Essence videosin a foreign language. (Pl.'s Opp'n (dkt. #199) 3.)

Plaintiff also argues that to the extent her claims rest entirely on foreign uses, she can pursue such a claim under an unjust enrichment theory. As such, this motion is DENIED, subject to proof of timely disclosure under Rule 26 and plaintiff further flushing out her damages theories, including the scope of this unjust enrichment claim, as part of today's final pretrial conference.

### H. MIL No. 8: exclude evidence concerning the Cal-Mag product line (dkt. #142)

In this motion, defendant represents that plaintiff hinted that Flora's Calcium-Magnesium ("Cal-Mag") line of products may be relevant to her claim for damages. Because of this, defendant seeks an order excluding such evidence as irrelevant under Rule 401 and more prejudicial than probative under Rule 403. In support of this motion, defendant points to the contradiction between Sullivan's Rule 26 disclosures stating that she "reserves the right to add to this damages calculation once Flora discloses its financial information related to the sales of the Cal-Mag products," but defendant represents that neither of plaintiff's experts sought review of the Cal-Mag financial records.

In response, plaintiff explains that she only learned of the Cal-Mag video, as well as the use of the Floradix video in creating the Cal-Mag video in August 2016, during the

deposition of Amber Trant.  Shortly after that deposition, plaintiff sought discovery on the video itself, and financial information relating to that product line.  While she has not obtained the necessary financial information, Sullivan maintains that she should still be able to rely on this video to prove copying in support of her infringement claim, and that she can pursue a "use-based" damages claim, rather than one based on lost profits.

While this infringement claim may have been developed later than other alleged unauthorized videos and uses, the court sees no reason to exclude it from the infringement liability finding.  Also, given plaintiff's plan to limit her damages request with respect to this particular alleged infringing use to a use based theory, rather than lost profits, plaintiff appears to have sufficient evidence to pursue a claim for damages as well.  As such, this motion is DENIED.

## I.   MIL No. 9:  exclude invoice evidence for failure to comply with discovery rules and schedule (dkt. #154)

Finally, defendant seeks an order excluding invoice documents apparently from other work projects disclosed by Sullivan on March 27, 2017, two days before the deadline for pre-trial materials.  Defendant points out that some of the documents are dated as early as May 26, 2016, and that plaintiff failed to produce these documents timely in response to its mandatory production obligation in Rule 26 and Flora's subsequent discovery requests.  Flora contends that it was prejudiced by this late disclosure, particularly because some of the invoices "purport to include charges that are tenfold the previously produced information from a pricing perspective," thus undermining Flora's reliance on previously

produced invoices showing amounts consistent with what Designomotion had paid plaintiff ($2,500 per motion graphic video).

In response, plaintiff explains that she produced eight invoices and one income statement, totaling nine pages, relating to one of her clients; those documents are dated May 26, 2016, May 31, 2016, June 2, 2016, August 5, 2016, December 9, 2016, February 24, 2017, and March 17, 2017. In response to defendant's February 9, 2016, document requests, plaintiff also produced other invoices, but none of these documents were available at that time, nor were they available at her May 24, 2016, deposition. Perhaps plaintiff had an ongoing duty to produce the invoices, but the court is hard-pressed to find a discovery violation in light of the fact that they were produced before the close of discovery. Moreover, defendant's claimed prejudice rings hollow in light of the fact that plaintiff's supplemental Rule 26 disclosures included a re-use value consistent with those produced in her invoices. Finally, Sullivan's damages expert Danny Mager included a similar re-use fee range in his report. As such, any claim that defendant would have retained an expert if it had known of these higher rates is not credible, and this motion is DENIED.

## IV.  Plaintiff's Motion for Attorney's Fees and Costs

As plaintiff details in her motion, defendant has been reluctant to disclose certain damages discovery, which plaintiff maintains is essential for pursuing damages based on lost profits. Judge Crocker, understandably, postponed ruling on damages discovery disputes, pending issuance of the summary judgment opinion. After that decision was issued, the court took up all remaining discovery disputes, including those involving damages, during an October 14, 2016, in-person hearing.

As discussed during the hearing, plaintiff sought discovery to calculate and test defendant's profits on alleged infringing products. In particular, plaintiff sought data on the cost of goods sold. During that hearing, the court crafted an order requiring defendant to make its records available to plaintiff's expert with the assistance of one of defendant's IT staff. (10/14/16 Hr'g Tr. (dkt. #104) 23.) At the time, counsel for defendant responded that this was a "fantastic idea." (*Id.*) During the hearing, there was also a discussion about accessing financial records of Flora Manufacturing & Distributing, Ltd., to understand which company profited from foreign sales. Moreover, plaintiff had articulated a credible basis for questioning whether defendant incurred all of the expenses, while Flora Manufacturing, which shares the same ownership as defendant, recorded all of the profits.

In response to that discussion, the court, therefore, directed Flora to "not segregate financial information that's available through the Flora financial system when the financial expert . . . is out examining their records. And if through that system they can access to the Canadian company, you will allow access to that." (*Id.* at 34; *id.* at 35 (further clarifying that if defendant has "access to that information from its computers, your expert is free to examine it").)

Despite this direction and plaintiff's list of financial records her expert hoped to view during his visit, defendant initially provided only screen shots of cost categories and margins for certain products, representing that receipts for expenses were all housed in Canada. As a result, the court ordered defendant to produce physical copies of invoices. Plaintiff also raised concerns about the lack of access to Flora Manufacturing & Distributing's financial information. In response, the court also ordered the CFO of Flora

Manufacturing, who was on site specifically to assist plaintiff's expert with his review, to establish a VPN and provide access to the financial information of Flora Manufacturing to plaintiff's expert.  (11/14/16 Hr'g Tr. (dkt. #106) 16.)

In a November 14, 2016, order, the court concluded that "counsel for plaintiff is entitled to review the financial information obtained by plaintiff's expert Denis Kleinheinz during his November 4, 2016, visit to Flora, Inc.  As set forth in his affidavit, Kleinheinz has satisfied the court that the financial records of Flora Manufacturing & Distributing Ltd. may assist in a determination of relevant costs and revenues for the defendant's allegedly infringing products."  (11/14/16 Order (dkt. #111).)

Plaintiff now moves for attorneys' fees and costs, including the costs of her attorney and expert to travel to Washington for the November 4th review, as a sanction pursuant to Federal Rule of Civil Procedure 37.[4]  Defendant opposes the motion on several bases -- some of which concern whether the evidence obtained is admissible -- but most pointedly based on its assertion that it complied with the court's direction.  The record set forth above belies that latter assertion.

To the contrary, defendant's actions in failing to make any meaningful efforts to collect the data on plaintiff's list, which was sent before the expert's November 4th visit, and in dragging its feet at offering access to Flora Manufacturing & Distributing's financial information, which was available in light of *defendant's* decision to have Flora

---

[4] Plaintiff also moves to seal certain documents filed in support of her motion for attorneys' fees and costs, as required by this court's order that certain financial records be designated "Highly Confidential -- Trial Counsel's Eyes Only" (dkt. #111).  (Pl.'s Mot. to Seal (dkt. #129).  The court will grant that motion.

Manufacturing & Distributing's CFO present at the inspection, presumably as the person most -- or perhaps the only person -- qualified to provide that guidance, justifies sanctions under Rule 37.

Still, the court finds plaintiff's requested reimbursement of over $14,000 to be unreasonably high, especially in light of the fact that (1) plaintiff's counsel need not have accompanied plaintiff's expert on the inspection -- indeed, the court expressly ordered that the inspection would occur without the involvement of counsel -- and (2) plaintiff's expert would have had to spend time reviewing the evidence even if it had been produced for review without any hesitation.  Discounting accordingly, the court will award plaintiff $5,000.

ORDER

IT IS ORDERED that:

1) The parties' joint motion to permit witnesses to use a computer during testimony (dkt. #128) is RESERVED.

2) Plaintiff's motions in limine (dkt. #153) are GRANTED IN PART AND DENIED IN PART as set forth in the opinion.

3) Defendant's motion in limine to exclude testimony of Dennis A. Kleinheinz (dkt. #135) is GRANTED AS UNOPPOSED.

4) Defendant's motion in limine to exclude proposed damages testimony of Danny Mager (dkt. #136) is DENIED.

5) Defendant's motion in limine to exclude liability expert testimony (dkt. #137) is DENIED AS MOOT.

6) Defendant's motion in limine to exclude mention of digital files (dkt. #138) is RESERVED.

7) Defendant's motion in limine to exclude mention of Flora, Inc.'s sales or profits (dkt. #139) is DENIED. The court, however, reserves on a more general challenge to plaintiff's lost profits theory pending argument at the final pretrial conference.

8) Defendant's motion in limine to exclude mention of Flora Manufacturing & Distributing, Ltd.'s sales or profits (dkt. #140) is RESERVED.

9) Defendant's motion in limine to exclude evidence of foreign usages and activities (dkt. #141) is DENIED and plaintiff shall further flush out her damages theories, including the scope of her unjust enrichment claim, during the final pretrial conference.

10) Defendant's motion in limine to exclude evidence concerning Cal-Mag product line (dkt. #142) is DENIED.

11) Defendant's motion in limine to exclude invoice evidence for failure to comply with discovery rules and schedules (dkt. #154) is DENIED.

12) Plaintiff's motion for attorney's fees and costs (dkt. #112) is GRANTED IN PART AND DENIED IN PART. Plaintiff is awarded $5,000.

13) Plaintiff's motion to seal (dkt. #196) is GRANTED.

Entered this 12th day of April, 2017.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge