# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AMY LEE SULLIVAN,

                        Plaintiff,                           OPINION AND ORDER

    v.
                                                            15-cv-298-wmc
FLORA, INC.,

                        Defendant.

Plaintiff Amy Lee Sullivan asserted copyright infringement claims and related unjust enrichment claims against defendant Flora, Inc., based on Flora's use of Sullivan's illustrations. This case was tried to a jury, who (1) rejected defendant's joint works defense (Jury Verdict Phase I (dkt. #251)), (2) found in favor of plaintiff on both her copyright infringement and unjust enrichment claims (Jury Verdict Phase II (dkt. #253)), and (3) awarded her $143,500 in actual damages for copyright infringement, $3,600,000 in statutory damages for copyright infringement and $350,000 in damages for unjust enrichment (Damages Verdict (dkt. #257)). Not surprisingly, plaintiff opted for the statutory over the actual damages award for the copyright infringement claim, and the court entered judgment in her favor, resulting in a total damages award of $3,950,000. (5/16/17 Op. & Order (dkt. #278); Judgment (dkt. #279).)

Before the court are a number of post-trial motions. Defendant seeks remittitur of the damages award or a new trial on damages as excessive or violating substantive due process. (Dkt. #295.) For the reasons described below, the court agrees that the amount of the jury's statutory award for copyright infringement is very high, but not "monstrously excessive," without a rational connection to the evidence or outside a rough comparison to

similar cases.  Similarly, the award for unjust enrichment is neither excessive, nor against the manifest weight of the evidence.  The court also rejects defendant's argument that awards, falling well within the statutory range, "shocks the conscious."  Sullivan also filed her own motion for an award of attorney fees and related non-taxable expenses.  (Dkt. #386.)  Because the court finds that defendant's joint works defense was objectively reasonable and that there are no other circumstances that would warrant fee-shifting, the court will deny that motion as well.  Even so, plaintiff is entitled to statutory costs pursuant to Federal Rule of Civil Procedure 54(d)(1) in the amount of $30,215.13.  (Dkt. #284.)  Finally, the parties filed related motions concerning execution of the judgment.  The court will grant defendant a brief stay of 45 days to arrange a bond or other acceptable surety, or obtain a further stay from the Seventh Circuit.  If defendant fails to accomplish one these steps, plaintiff will be free to proceed to enforce the judgment.

## OPINION

## I.  Defendant's Motion for Remittitur or a New Trial

Defendant Flora seeks remittitur of the jury's statutory damages award of $3,600,000.00, to $30,000.00, based on a theory that:  (1) the jury only had a basis for finding infringement of, and thus awarding statutory damages for, 11 of the 33 copyrighted illustrations; (2) the jury had no basis for finding that the infringement was willful; and (3) an award at the statutory maximum for non-willful infringement is capped at $30,000 per work.  Defendant also seeks remittitur of the award for unjust enrichment of $350,000.00, arguing that plaintiff Sullivan failed to prove any benefit to defendant and the record only

reflected three foreign-language productions of the Flor-Essence video. Alternatively, defendant seeks a new trial on damages.

In reviewing a request for remittitur, the court is to consider: "(1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *Deloughery v. City of Chi.*, 422 F.3d 611, 619 (7th Cir. 2005). In reviewing a request for a new trial under Federal Rule of Civil Procedure 59, the court considers whether the "verdict is against the manifest weight of the evidence." *Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).

As an overarching matter, plaintiff contends that defendant should not be able to raise insufficiency of the evidence challenges in the context of a Rule 59 motion, having failed to move before the case was submitted to the jury under Rule 50(a) or to renew the motion under Rule 50(b). (Pl.'s Opp'n (dkt. #313) 4-5.) Although that sanction would be too harsh, Rule 59 may not be used to raise new theories or arguments that could have been presented before judgment was entered. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 410 (7th Cir. 1999) ("Rule 59(e) may not be used to raise novel legal theories that a party had the ability to address in the first instance."). Accordingly, the court will consider the merits of defendant's various arguments in light of whether it could have raised them in a Rule 50(a) motion.

## A.  Statutory Damages Award for Copyright Infringement

### i.  Number of Works

First, defendant contends that while plaintiff's copyrights cover 33 illustrations, plaintiff only introduced evidence to support a finding of infringement as to 11 of those illustrations.[1]  This finding is material because the jury was instructed to award statutory damages by individual work, as the law directs (Damages Instr. (dkt. #254) 2), and the court had previously determined that each illustration constituted a separate work. (4/17/17 Order (dkt. #240).)

In response, plaintiff directs the court to Exhibit 384, containing the digital files of her copyrighted illustrations that Sullivan testified without contradiction were found on a hard drive copied from Flora's own computer system.  (Trial Tr. (dkt. #276) 60.)  That Exhibit also describes the illustrations Flora used in foreign language productions.  (Ex. 384 (listing illustrations used in the Greek, Spanish and Chinese Flor- Essence videos, among others).)  From this, a reasonable jury could infer that all 33 illustrations *were* used by Flora in violation of Sullivan's copyrighted works.  In addition to Sullivan's testimony as to the use of her protected works reflected in Flora's records and advertisements, plaintiff notes the testimony of Flora's own employees, who acknowledged their use of her illustrations in other promotional materials *and* Flora's efforts to modify the illustrations to avoid Sullivan's claims of copyright infringement, which the jury could reasonably have found was insufficient.  (Pl.'s Opp'n (dkt. #313) 7.)

---

[1] A detailed description of the nature of plaintiff's multi-layered, original source art, including examples of copyrighted illustrations can be found in the court's summary judgment decision.  (Dkt. #101.)

Supplemented by this testimony from Sullivan and various Flora employees, therefore, a reasonable jury could have relied on Exhibit 384 to conclude that Flora continued to use either the original illustrations (or modified versions of those illustrations that still infringed Sullivan's copyright) well beyond the scope of the originally limited license. Indeed, this finding was probably inevitable in light of defendant's failure to develop any responsive evidence or argument during the course of trial, especially in the damages phase, that the jury should only award statutory damages based on some subset of Sullivan's illustrations. Accordingly, the court rejects any challenge to the statutory damages award on this basis, finding the jury's award for all 33 works had a rational connection to the evidence for purposes of defendant's motion for remittitur and is not against the manifest weigh of the evidence for purposes of defendant's motion for a new trial.

### ii. Jury's Consideration of Various Factors

Next, defendant challenges the jury's statutory damages award on the basis that the jury disobeyed the court's instructions in arriving at the $3.6 million award. Specifically, the jury was instructed that they *may* consider the following factors:

- the expenses that defendant saved and the profits that it earned because of the infringement;

- the revenues that plaintiff lost because of the infringement;

- the difficulty of proving plaintiff's actual damages;

- the circumstances of the infringement;

- whether defendant intentionally infringed plaintiff's copyright; and

- deterrence of future infringement.

(Damages Instr. (dkt. #254) 3.)

Consistent with the law, the jury was neither instructed that they *had* to consider all of these factors, nor how they should weigh each of the factors; rather, they were told these factors simply provided guidance on how to consider a per work award of $750 to $30,000, or up to $150,000 if the jury found that defendant willfully infringed plaintiff's copyright. Nevertheless, defendant now speculates that the jury's treatment of three of the factors either compels remittitur or a new trial. The court addresses each of these three factors below.

### a. Flora's Profits

First, defendant argues that despite there being no evidence of defendant's profits earned because of the infringement, the jury must have "guessed at Flora's profits" and used that guess to support "this oppressive and disproportionate award." (Def.'s Br. (dkt. #296) 13.) As context, the court previously determined that plaintiff could not pursue an actual damages award based on defendant's lost profits because of this lack of evidence. (4/25/17 Op. & Order (dkt. #261) 1-7.) Still, defendant never objected to including both expenses saved and profits earned in the factors listed consistent with the pattern jury instructions.

During deliberations on damages, the jury submitted a question asking for defendant Flora's annual profits from 2014, 2015 and 2016 from the sales of two infringing products, 7 Sources and Flor-Essence. (Court Ex. 19 (dkt. #258-19).) Because there was no evidence breaking out profits attributable to the infringement, the court instructed the jury that "Your decision must be based on the evidence in the record." (Court Ex. 20 (dkt.

#258-20).) Approximately 30 minutes later, the jury rendered their verdict. Defendant engages in rank speculation as to the importance of this brief exchange based solely from the short gap between the court's answer and the jury's verdict.

Not only does defendant's speculation run contrary to the evidence and instructions given to the jury, but it is much more likely that the jury understood the court's response as confirming that there was no evidence as to defendant's profitability. Moreover, there is nothing in the record to support defendant's contrary theory. *See CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) ("[J]uries are presumed to follow the court's instructions."). If anything, the quick turnaround suggests the jury finished its deliberations with renewed understanding that profits were *not* a factor they could meaningfully consider. Finally, since copyright law did not *require* plaintiff to prove defendant's profits from infringement, any failure to provide the jury with a sense of those profits falls as much on defendant as plaintiff. Having taken a chance by not providing evidence on this guidepost, despite being in the best position to do so, defendant has little basis to complain about the jury choosing not to consider it (or even assuming the answer would likely be unhelpful to defendant).

### b. Difficulty in Proving Actual Damages

Next, defendant contends that there was no evidence to support a jury finding that it was difficult to prove plaintiff's actual damages, since the jury awarded her $143,500 in actual damages. This is a silly argument, however, since it is perfectly consistent to award *known* damages, while acknowledging that the evidence was not sufficient to determine other, less well known damages. Plaintiff concedes as much by contending that the jury's

award may not reflect plaintiff's actual damages, especially in light of the court's ruling excluding expert testimony on a reasonable royalty rate.

Moreover, since the jury was not aware that plaintiff could elect between the statutory and actual damages awards, they may have awarded a conservative amount for her actual damages to ensure that she did not receive a windfall. Regardless, the court presumes the jury awarded each category of damages based on the evidence and instructions on the law, which in its experience is generally the case. Regardless, the jury was not required to weigh the difficulty in proving actual damages heavily, nor is there any basis for finding that the jury's award of actual damages runs counter to that instruction.

### c. Plaintiff's Lost Revenues

Finally, defendant contends that there was "no evidence in the record that plaintiff lost $3.6 million in revenue because of the infringement." (Def.'s Opening Br. (dkt. #296) 15.) Here, too, defendant fundamentally misunderstands the nature of the multi-factor test provided to the jury. The jury need not find that the statutory damages award *matched* plaintiff's lost revenues. To the contrary, plaintiff's lost revenues were merely one of several factors in a non-exclusive list that the jury *could* weigh in arriving at its statutory damages award.

Even so, the court acknowledges that the statutory award far exceeds the original charge for plaintiff's copyrighted work of $5,500, even accounting for the fact that its authorized use was expressly limited and that her copyright was for a unique "style" and "feel" that plaintiff was careful to protect. In particular, the court is concerned about the lack of mooring of the statutory award given the relatively small fee, the likelihood that

given an unrestricted use fee would likely have been negotiated at a reasonable multiple of the original fee, and lack of evidence of plaintiff charging a substantially larger multiple for unrestricted use of her work in any context.

Offsetting these concerns, however, are the defendant's failure to make most of these arguments to the jury, defendant's apparent cavalier disregard of plaintiff's copyright even after being specifically reminded of the express contractual limit on its use in any other advertising campaign, *and* Congress's deliberate, significant increase in the range of statutory awards without reference to any cap based on plaintiff's proof of lost revenue or profits.[2]  Moreover, as a one person shop, the plaintiff's fixed costs were likely quite small and the marginal time spent in creating likely small given that her work had been largely created already through her use of computer modeling of the style that originally attracted Flora in the first place.  Plus, it was reasonable for the jury to assume that the original bid was something of a loss leader, given the prospect of lucrative fees from defendant's use of her copyright in future campaigns, which the jury was obviously persuaded defendant proceeded to do, albeit without compensation to plaintiff.

### d.  Other Factors

Accordingly, none of defendant's speculation about how the jury may have considered or weighed the three factors that are arguably least supportive of a large statutory damages undermine the jury's award -- especially when the jury was free to

---

[2] Congress increased the statutory damages range per work from $250 to $10,000 to $750 to $30,000 for knowing infringement, and increased the maximum award for willful infringement from $100,000 to $150,000, as part of the Digital Theft Deterrence and Copyright Damages Infringement Act of 1999.  Act of Dec. 9, 1999, Pub. L. 106-160, 113 Stat. 1774.

consider and weigh the listed factors as they saw fit, as well as other factors not explicitly identified in the court's instructions. In short, within the bounds of statutory limits, the jury was asked to and apparently did engage in a classic weighing of factors, which is now due substantial deference from this court. As a result, even if these factors, viewed in isolation, do not support the jury's award, it does not render the award "oppressive and disproportionate," as defendant now argues. (Def.'s Opening Br. (dkt. #296) 13.)

Contrary to defendant's positions, the jury could have reasonably relied upon, or placed the greatest weight on, the last three factors to arrive at its award: (1) the circumstances of the infringement; (2) whether defendant intentionally infringed plaintiff's copyright; and (3) deterrence of future infringement. (*See* Pl.'s Opp'n (dkt. #313) 10-13.) Indeed, the facts of record here support a reasonable jury's award of a substantial statutory damages award. This is not to say that the court would have arrived at the *same* statutory damages award. Although a statutory award above $1 to $2 million dollars would have struck the court as excessive, even allowing for the need to send a sufficient deterrence here, that is not the standard of review. Under the appropriate standard, this court is unable to find the jury's award to be wholly unreasonable, much less "monstrously excessive," without a rational connection to the evidence, or roughly incomparable to similar cases, nor that it is against the manifest weight of the evidence. Indeed, despite remarkable underlawyering by defense counsel, particularly in the damage phase of trial, the jury clearly understood that the purpose of statutory damages extend well beyond the actual damages suffered by Sullivan, especially where willful or reckless disregard of copyrights are involved. Indeed, the jury award of $143,500 in compensation for

defendant's extensive, unauthorized use of plaintiff's copyrighted works was reasonably commensurate with the relatively small sum of $5,500 that she was paid by defendant for the original, limited use of her work. Rather than award some irrationally larger number in reaching statutory damages, the jury was obviously struck by defendant's recklessness in the continued, unauthorized and extensive use of her work in commercial, online advertising campaigns for its products around the world, and ultimately the need to reprimand and deter similar misuse of copyrighted works for unauthorized purposes. Moreover, for reasons expanded upon further in Section II of this opinion, the court finds this award to have a rational connection to the relatively one-sided evidence presented at trial. Finally, as also explained in Section II below, defendant has failed to convince the court that the jury's award here is not roughly comparable to awards made in similar cases.

### iii.    Willfulness Finding

Based on the facts presented at trial, it appears that the jury awarded roughly $110,000 per work ($3.6 million total award, divided by the 33 illustrations). In reaching the $3.6 million award, therefore, the jury necessarily found that defendant willfully infringed plaintiff's copyright. Otherwise, the jury's award would have been capped by statute at $30,000 per work for a total of $990,000. The jury instructions stated "[i]nfringement is considered 'willful' if plaintiff proves that defendant knew that its actions constituted infringement of plaintiff's copyright or acted with reckless disregard of plaintiff's copyright." (Damages Instr. (dkt. #254) 3.)

Defendant contends that the evidence does not support a finding of willfulness, but makes its case by selectively directing the court to evidence in the record that: (1) Flora

was unaware of Sullivan's role in creating the illustrations, having only worked with Joe Silver; (2) once Flora was made aware of Sullivan's claims of copyright infringement, it removed her illustrations from Flora's social media websites; and (3) Flora made efforts to make "clean" versions of the videos, purportedly removing Sullivan's illustrations. (Def.'s Opening Br. (dkt. #296) 16-20.) On the other hand, as plaintiff points out, there was substantial, additional evidence in the record that rather than create new art, Flora simply decided to alter Sullivan's copyrighted artwork by a "certain percentage," reasoning (incorrectly as it turns out) that it had already paid for the art and did not want to pay for additional illustrations. (Pl.'s Opp'n (dkt. #313) 18-23.)

If the jury credited this latter evidence, which it reasonably could and obviously did, then they also had a reasonable basis to find that: (1) Flora continued to infringe after being made aware of Sullivan's copyrights by making relatively minor changes to her illustrations, including the use of her digital files to do so; and (2) such continued infringement was at least in reckless disregard of her copyrighted work. As such, the court concludes that defendant has failed to meet its burden of showing that a finding of willfulness for purposes of awarding enhanced statutory damages was against the manifest weight of the evidence.

### iv.   Due Process Challenge

Defendant's alternative argument is that the jury's award violates its substantive due process rights. In advancing this argument, defendant points out that the ratio of statutory damages to actual damages here is 25:1 ($3.6 million, as compared to $143,500), which it argues runs contrary to the Supreme Court's decision in *BMW of North America v.*

12

*Gore*, 517 U.S. 559 (1996), calling into substantial question the constitutionality of any jury awards of punitive damages in common law tort cases that are at a ratio of more than 10:1 to the jury's award of compensatory damages. 517 U.S. at 582. However, the United States Supreme Court established the test for evaluating a due process challenge in the context of *statutory* damages scheme almost one-hundred years ago in *St. Louis, I. M. & S Ry. Co. v. Williams*, 251 U.S. 63 (1919), and has not departed from it since. The *Williams* Court held that due process is violated "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 66-67. While the Seventh Circuit does not appear to have considered a due process challenge to a statutory damages award for copyright infringement since *BMW*, other federal circuit courts in recent opinions have continued to embrace the *Williams* standard. *See, e.g.*, *Warner Bros. Entm't, Inc. v. X One X Products*, 840 F.3d 971, 977 (8th Cir. 2016); *Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67, 71 (1st Cir. 2013); *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 587 (6th Cir. 2007).

Moreover, in reviewing an award of statutory damages for copyright infringement, the Seventh Circuit has described the standard as "even more differential than an abuse of discretion." *Broad. Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 487 (7th Cir. 1995); *see also Douglas v. Cunningham*, 294 U.S. 207, 210 (1935) (explaining that Congress's purpose in enacting the statutory-damage provision in the 1909 Copyright Act was to "take[] the matter out of the ordinary rule with respect to abuse of discretion."). Recognizing that its position urging substantially less deference lacks clear support in current caselaw, defendant nevertheless urges the court to apply the three *BMW*

"guideposts." As far as this court can discern, all federal circuit courts who have considered this approach have rejected it. *See Sony BMG*, 719 F.3d at 70-71; *Capitol Records, Inc. v. Thomas Rasset*, 692 F.3d 899, 907-908 (8th Cir. 2012); *Zomba Enters.*, 491 F.3d at 587; *see also James Michael Leasing Co., LLC v. PACCAR Inc.*, No. 11-C-0747, 2013 WL 694764, at *2 (E.D. Wis. 2013) ("[A]ll of the circuits to have addressed the question have held that those guideposts do not apply to statutory penalties.").

As the Eighth Circuit aptly explained, the concern about fair notice in the punitive damages context "does not apply to statutory damages, because those damages are identified and constrained by the authorizing statute." *Capitol Records*, 692 F.3d at 907. Moreover, at least two of the guideposts plainly have no application:

> It makes no sense to consider the disparity between 'actual harm' and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate. Nor could a reviewing court consider the difference between an award of statutory damages and the "civil penalties authorized," because statutory damages *are* the civil penalties authorized.

*Id.* at 907-09. Accordingly, this court rejects defendant's invitation to review the jury's award of statutory damages for copyright infringement using a due process framework developed by the Supreme Court for common law punitive damages awards.[3]

---

[3] Even if the court were to entertain such a challenge, it is not clear that the appropriate comparison should be between the $143,500 compensatory damages award and the $3.6 million statutory damages award, since arguably the proper comparison should be the maximum statutory award for non-willful infringement of $990,000 and the $3.6 million award here, which would obviously fall well within the presumptive 1:10 ratio limit.

The issue remains, however, whether the $3.6 million statutory damages award is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 66-67. In addition to defendant's attack that the jury's award far exceeds the single-digit ratio generally permitted since *BMW* for awards of *punitive* damages, defendant also directs the court to two district court cases, which it contends are comparable, and for which the statutory damages awards were significantly less than that awarded here. (Def.'s Opening Br. (dkt. #296) 23.) First, in *Spectrum Brands, Inc. v. I&J Apparel, LLC*, No. 16-CV-741-JDP, 2017 WL 2303577, *4 (W.D. Wis. May 26, 2017), this court awarded statutory damages in the amount of $10,000 per work in the context of a default judgment. Of course, that case did not concern the review of a jury award, which is entitled to great deference. *See Deloughery*, 422 F.3d at 619 (remittitur standard: set aside if it is "monstrously excessive"); *Mejia* 650 F.3d at 633 (Rule 59 standard: "against the manifest weight of the evidence"); *Williams*, 251 U.S. at 66-67 (due process standard: "so severe and oppressive").

Moreover, in *Spectrum Brands*, the plaintiff sought an award of $30,000 per work (the statutory cap for non-willful infringement), significantly less than what plaintiff requested here. *Spectrum Brands*, 2017 WL 2303577, at*4. The court also awarded significant damages for trademark infringement of $200,000, emphasizing that although certain factors weigh in favor of awarding a similar amount for copyright infringement, "granting two separate damages awards under the same analytical framework would result in dual recovery." *Id.* Finally, in considering the remedial purpose of the award, this court explained that "there is no information that would suggest that [the defendant] I&J

Apparel is a large-scale operation that would warrant damages of nearly half a million dollars as Spectrum Brands requests." *Id.* All of these points of distinction render *Spectrum Brands* of little guidance here.

The second case cited by defendant, *Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708 (N.D. Ill. 2014), is similarly unhelpful. In *Kinsey*, the statutory damages award was $7,500 per work, for a total award of $22,500, and was also awarded in the default judgment context. *Id.* at 713. Moreover, the district judge faulted plaintiff for its failure to put forth evidence to support a default judgment award. *Id.* at 713. As a result, the court's analysis in *Kinsey* is limited to its conclusion that "a $7,500 award of statutory damages for each work infringed is well within the statutory range and should be sufficient to deter future violations." *Id.*

In response to defendant's citation to these two decisions, plaintiff also directs the court to a number of opinions that uphold jury awards for substantial statutory damages for copyright infringement, ranging from $1 million to $31.68 million. (Pl.'s Opp'n (dkt. #313) 23-24.) In its reply, defendant attempts to distinguish these cases, either on the basis that: (1) the works implicated in the awards were significantly more than the 11 (or even 33, assuming all were infringed, contrary to defendant's position), and thus, the per work award was substantially less than that $110,000 per work award here; or (2) the defendants' behavior was more egregious than that at issue here. Both are fair points.

Indeed, the statutory award here appears to fall on the high end for copyright infringement claims given all of the facts of record. Still, defendant fails to develop any compelling argument why the $3.6 million award (or approximately $110,000 per work

award) is so oppressive and severe as to violate its due process rights. While the award may result in a windfall to this plaintiff, as courts have repeatedly recognized, Congress obviously has in mind larger goals than just remuneration. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (listing factors to consider in setting statutory damages award). Likely as a result, it is hard to find any reasonably contemporary case ordering remittitur of a jury's statutory damages award in the copyright setting except in file-sharing (peer to peer) cases where the defendant is an individual, rather than a commercial enterprise, much less a large commercial enterprise like the defendant that a jury found willfully disregarded plaintiff's copyright.

### B. Unjust Enrichment Damages

As described above, the jury also awarded separate damages for plaintiff's unjust enrichment claim. The jury was instructed that:

> Unjust enrichment damages *cannot* be awarded for any injury caused by copyright infringement occurring within the United States. The measure of damages under unjust enrichment is the value of the benefit conferred on defendant. The value of the benefit may be calculated based on the prevailing price of plaintiff's services as long as those services benefited the defendant.

(Damages Instr. (dkt. #254) 3-4.)

In its motion, defendant cobbles together an argument seeking a remittitur between $9,000 to $60,000 based on a per video damages award of $20,000. Defendant attacks the jury's award for two core reasons: (1) plaintiff failed to put forth evidence of a benefit to Flora; and (2) plaintiff only introduced evidence of three foreign language Flor-Essence videos (not five or six). Critically, *neither* of these argument were presented to the jury or

the court.[4]  Indeed, as plaintiff points out in her opposition brief, counsel for defendant failed to even utter the words "unjust enrichment" during his closing argument in the damages phase.  As the court held above, Rule 59 is *not* the proper mechanism for bringing theories or arguments that could have been raised before judgment.  *See Uphoff*, 176 F.3d at 410.

Even if the defendant had not waived this challenge, the court readily finds a rational connection between the evidence and the jury's damages award.  Indeed, plaintiff produced evidence showing that Flora copied and distributed infringing illustrations to be used in *at least* six separate Flor-Essence videos and four separate Floradix videos, in addition to other foreign materials (e.g., Flora's "Pulse" magazine).[5]  (Pl.'s Opp'n (dkt. #313) 14-15.)  Moreover, plaintiff maintained that she had evidence of 310 unauthorized foreign uses, though some of her math is difficult to follow.  Even assuming a fraction of those uses, at the $3,000 to $6,000 per re-use figure, which *defendant* appears to have embraced in its brief,[6] the $350,000 is rationally connected to the evidence, or at least defendant has failed to demonstrate otherwise.  For all of these reasons, the court will deny

---

[4] Moreover, this first argument really goes to whether the jury's *liability* verdict, finding unjust enrichment, was supported by the evidence.  However, defendant did not challenge the jury's liability verdict either in a Rule 50 or 59 motion.

[5] Defendant makes much of the fact that only three of the videos were admitted into evidence, but other evidence establishes the production and dissemination of foreign language videos, or at least the jury could reasonably find.  (Pl.'s Opp'n (dkt. #313) 14-15; Def.'s Opening Br. (dkt. #296) 27 (describing defendant's employees' testimony about production of foreign language videos).)

[6] *See* Def.'s Opening Br. (dkt. #296) 14 (quoting Silver's testimony that the market value of Sullivan's illustrations was somewhere between $3,000 and $6,000 "for reuse of each illustration").

defendant's motion for remittitur or a new trial on the jury's award of unjust enrichment damages.

## II. Plaintiff's Motion for an Award of Attorneys' Fees and Costs

Also pending is plaintiff's motion for an award of attorneys' fees and costs as the prevailing party under the Copyright Act, which provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.[7]

17 U.S.C. § 505. In *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016), the United States Supreme Court provided relatively recent guidance to district courts as to the "standards that courts should adopt, or guideposts they should use, in determining when such awards are appropriate." *Id.* at 1984-85. In doing so, the Court reiterated its prior holding that "a district court may not 'award[] attorney's fees as a matter of course'; rather a court must make a more particularized, case-by-case assessment." *Id.* at 1985.

As a framework, the *Kirtsaeng* decision turns to the purpose of the Copyright Act, which the Supreme Court explained seeks to "strik[e] a balance between . . . encouraging and rewarding authors' creations while enabling others to build on that work," concluding that the fee shifting provision "should encourage the types of lawsuits that promote those purposes." *Id.* at 1986. The Court then considered the respective proposals of the parties'

---

[7] Plaintiff also seek costs pursuant to Federal Rule of Civil Procedure 54(d)(2).

in that case -- whether substantial weight should be given to "the objective (un)reasonableness of a losing party's litigation position," or "to a lawsuit's role in settling significant and uncertain legal issues." *Id.* While rejecting the latter proposal, the Court found that the objective-reasonableness approach favors the dual goals of the Copyright Act: "The holder of a copyright that has obviously been infringed has good reason to bring and maintain a suit even if the damages at stake are small; and, likewise, a person defending against a patently meritless copyright claim has every incentive to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement." *Id.*

The *Kirtsaeng* Court also explained that focusing on the objective reasonableness of the position of the losing party is also "more administrable" since "[a] district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense." *Id.* at 1987. While holding that the objective reasonableness of the losing party's position on the merits is entitled to substantial weight in deciding whether to shift fees, the Supreme Court also cautioned that it is "not the controlling" factor, offering examples of when it may be appropriate to shift fees regardless of the reasonableness of the losing party' position (e.g., litigation misconduct or to deter repeated instances of infringement). *Id.* at 1988. For this reason, courts "must view all of the circumstances of a case on their own terms, in light of the Copyright's essential goals." *Id.* at 1989.

Here, for the reasons explained in the court's opinion and order on summary judgment, defendant's joint works defense was objectively reasonable. (10/7/16 Op. & Order (dkt. #101) 10-29.) Evidence of Joe Silver's contributions to Sullivan's final

illustrations, as well as their working relationship at the time the illustrations were created, provided a sufficient basis for a reasonable jury to conclude that Silver and Sullivan intended to create a joint work. Plaintiff would make much of the fact that she continuously denied that it was a joint work and of Silver's initial reliance on a work-for-hire agreement, which never existed, but neither argument undermines the reasonableness of defendant's decision to oppose this lawsuit based on a joint works defense. Moreover, a reasonable jury could also have concluded that Silver's contributions were independently copyrightable. The fact that the jury ultimately rejected this defense and found defendant's copyright infringement was willful does not undermine its objective reasonableness.

A further factor for the court in this case is that the jury awarded a sizeable statutory damages award, which is arguably on the high side given the $5,500 payment for plaintiff's original work and, therefore, is sufficient to protect the interests of the Copyright Act. Thus, no further compensation or deterrence in the form of an attorneys' fee award is necessary here.

Finally, the court has already considered whether other circumstances, namely litigation misconduct would warrant shifting attorney fees. While there were discovery disputes, some of which involved Flora needlessly refusing to produce financial documents, and Flora's disastrous failure to take plaintiff's claims seriously no doubt contributed to its lack of preparation and delays, the court does not find its conduct sufficient to constitute "litigation misconduct" that would warrant a shift in fees, especially in light of the other circumstances surrounding this case as discussed above.

While the court denies plaintiff's motion for an award of attorneys' fees and related non-taxable costs under 17 U.S.C. § 505, the court will of course award statutory costs to plaintiff as the prevailing party under Federal Rule of Civil Procedure 54(d).  (Dkt. #284; Pl.'s Br. (dkt. #297).)  Plaintiff seeks costs in the amount of $36,511.03, the bulk of which involves reimbursement for fees for printed or electronically recorded transcripts necessarily obtained for the use in the case ($31,957.80).  While defendant raises a variety of objections to the bill of costs (dkt. #294), it wisely maintains only three of them in its reply (dkt. #307), though with varying degrees of success.  First, defendant contends that the court should exclude all of plaintiff's costs for videotaping twelve depositions.  While the court would normally award these costs, plaintiff ended up arguing against the use of six of the video depositions at trial, instead urging the court to allow her to read narrative summaries.  Given that choice, some of the additional expense of a videotaped depositions seems unjustified, even without the benefit of hindsight.  Accordingly, the court will exclude $4,373.00 from the request, which reflects the court's estimation of the additional cost of videotaping these six depositions.

Second, defendant objects to the inclusion of the Realtime costs.  Here, too, the objection is warranted.  The general complexity of this case simply did not warrant this luxury as a matter of course, at least during depositions.  Absent some reason rendering Realtime necessary (e.g., a strong accent, hearing impairment, misconduct by witnesses or opposing counsel),[8] the court generally excludes those costs.  As such, the court will also

---

[8] While plaintiff contends that "multiple key deponents were non-native English speakers" (Pl.'s Br. (dkt. #197) 6), she fails to list who or otherwise describe any difficulty in understanding them.

exclude $1,582.50, which reflects the court's best estimation for these services during depositions, though *not* at trial.

Third, defendant contends that the plaintiff has failed to demonstrate that her printing costs were necessary for use in the case, specifically faulting the lack of detail on two invoices. Here, the court singly disagrees. The invoices are sufficiently detailed and appear to include necessary costs for purposes of trial preparation to warrant reimbursement. In total, therefore, the court will award plaintiff $30,555.33 in taxable costs.

## III. Defendant's Motion to Stay Execution of Judgment

Finally, both parties have filed motions concerning execution on the judgment. First, plaintiff filed a motion to register the judgment for enforcement in other districts. (Dkt. #315.) Absent a motion to stay execution, there is no reason why the court would deny that motion. Not surprisingly, on the heels of plaintiff's filing, defendant filed just such a motion pursuant to Federal Rule of Civil Procedure 62(d). (Dkt. #318.) Specifically, defendant requests that the court stay execution on the judgment without the necessity of filing a bond or providing other security. Instead, defendant offers proof of two insurance policies as assurance of its ability to pay the judgment if affirmed on appeal. (Def.'s Br. (dkt. #319) 2 (discussing factors for the district court to consider in determining whether to waive the posting of a bond) (citing *Dillon v. City of Chi.*, 866 F.2d 902, 904 (7th Cir. 1988)); Goody Aff., Exs. 1, 2 (dkt. ##320-1, 320-2) (insurance policies).)

In opposition, plaintiff contends that the affidavit ushering in the possibility of insurance coverage is inadequate, as it fails to explain: (1) the affiant's relationship to

either of the two insurance policies, and even more specifically, whether plaintiff would have standing to authorize or obligate payment under those policies should judgment come due; and (2) whether and how the policies cover the judgment. (Pl.'s Opp'n (dkt. #323).) The court agrees.

While Goody represents that Lloyd's has accepted coverage for Sullivan's claims "without reservations" (Goody Aff. (dkt. #320) ¶ 2), additional assurance is necessary, whether in the form of a bond, through Lloyd's providing a surety of payment of the judgment directly to plaintiff, or by some other means acceptable to plaintiff. As such, the court will order a stay of execution for 45 additional days only. If the defendant has not posted a sufficient bond to cover the monetary award by that time, provided some other surety of payment acceptable to plaintiff, or obtained a further stay from the Seventh Circuit, plaintiff is free to proceed to enforce the judgment in the amount of the $3.95 million plus costs.

## ORDER

Accordingly, IT IS ORDERED that:

1) Defendant Flora, Inc.'s motion for new trial or remittitur of statutory damages and unjust enrichment awards (dkt. #295) is DENIED.

2) Plaintiff Amy Sullivan's motion for attorney fees and related non-taxable expenses (dkt. #286) is DENIED.

3) Plaintiff's bill of costs (dkt. #284) is GRANTED IN PART. The court awards plaintiff costs in the total amount of $30,555.33.

4) Plaintiff's motion to enforce judgment (dkt. #315) is DENIED at this time as explained above.

5) Defendant's motion to stay enforcement (dkt. #318) is DENIED IN PART AND GRANTED IN PART. The court GRANTS a stay of execution on the final judgment of 45 days, providing defendant time to: (1) file certification of a bond sufficient to satisfy the monetary judgment in this case, (2) provide some other surety of payment acceptable to plaintiff and her counsel, *or* (3) obtain a stay of execution from the Seventh Circuit Court of Appeals. Absent completion of one of these three alternatives before that time, the stay will expire on August 13, 2018.

Entered this 29th day of June, 2018.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge